Samuels, J.
The statute, Code of 1849, p. 729, § 15, 16, places larceny of papers of value on the same footing as larceny of any other subject. The rules of law and evidence Applicable to the offence of larceny generally, must also apply in case of such larceny under the statute.
Several questions were discussed by the plaintiff’s counsel, in his printed argument, growing out of various errors alleged to have been committed in the mode of procuring the evidence, previous to the finding of the indictment on which the conviction was *761 had. I perceive no error in the action of the court, in these respects; the questions, however, do not properly present themselves in the record, and should, therefore, be no further considered.
The only question before the court is that presented by the motion for a new trial; that is, Whether the jury were justified by the evidence, in finding the plaintiff guilty of feloniously stealing, taking and carrying away the bond, as in the indictment alleged ? These ingredients are of the essence of the larceny charged. If they, or any one of them, do not exist, the offence is incomplete.
No question is or could be made in regard to the identity of the bond, or Keyser’s title thereto.
As to the felonious intent, that is the purpose of converting to the use of the party taking, lucri causa. If it be conceded, as it must be, that a man may commit larceny of a bond by which he stands bound for the payment of money to another, the only advantage or profit which can accrue to the party so committing larceny, is in withholding, concealing or destroying the evidence of his debt. If he steal a bond executed by another, he may possibly receive the money due thereon; of the bond binding himself, he can make no such use. The only advantage which Vaughn could promise to himself, was in the concealment or destruction of the bond. The evidence shows clearly, that he intended to secure this advantage to himself. The jury were therefore justified ■in finding the felonious intent, the animus furandi. It has been said that the offence is incomplete, because the money was still due, notwithstanding the concealment of the bond, and that it was subsequently produced; that the conversion to Vaughn’s use was therefore incomplete. This argument would apply in every case in which stolen property is reclaimed by the owner, before it is consumed by use; *762 the title of the owner of goods and chattels continues notwithstanding a larceny thereof; yet it has never held that the offence is less complete after they are reclaimed than if they had been used and consumed by the thief.
The “ taking,” another essential part of the offence, is said not to have occurred in this case. It is said that every larceny must contain within itself a trespass in the act of taking; that there can be no trespass against property not in the owner’s possession ; that in this case the possession of the bond was not in Keyser the owner, but was in Vaughn, who had acquired it without force or violence, and with Keyser’s assent. If all this be conceded, the question recurs. What is possession by the owner within the meaning of the law against larceny? It has been held that goods and money in a store under the control of a salesman who has no authority or interest about them but as salesman, are still in possession of the owner; and if such salesman animo furandi convert them to his own use, he is guilty of such “taking,” of such trespass, as is of the essence of larceny. So if a shopkeeper exhibit his wares to one who takes them into his hands under pretext of inspecting or buying them, but who forthwith converts them to his own use animo furandi, the “taking” or trespass against the property is such as enters into the offence. If by fraud or device the owner (not intending to part with his right,) be induced to place his property in the hands of another, who acquires possession with a felonious intent to convert it to his own use, the “taking” and trespass are such as are required to complete the offence of larceny. See Starkie v. The Commonwealth, 7 Leigh 752.
In this case the bond was permitted by Keyser to pass into Vaughn’s hands under the belief that it was to be immediately paid; to let him see that it was the bond he proposed to pay: Keyser had no *763 intention of delivering the bond and waiting to a future time for payment; and the device or trick by which Vaughn got the bond into his own hands, is equivalent to, if not identical with, a trespass against the possession. See the case above cited.
The “ carrying away ” necessary to complete the offence of larceny, may consist in a very slight removal of the stolen property; the removal to a much shorter distance than is shown in this case would have completed the offence.
The evidence tended strongly to prove every material allegation in the indictment. The plaintiff failed to prove that the bond was not justly due, or any other fact which would give him any pretext of right to act as he did. If under a mistaken opinion of right the plaintiff had acted in the manner disclosed by the evidence, he might have been held guilty of trespass merely. In the absence of all proof in extenuation of his offence, the jury were justified in rendering the verdict complained of.
I am of opinion to affirm the judgment.
Moncure, J.
My first impression of this case was strongly against the commonwealth. It has been weakened by the argument of the Attorney General, and the views of my brethren embodied in the opinion of Judge Samuels. But it has not been removed. The case is an extraordinary one. A man has been convicted of stealing his own bond; the act being done openly, in the presence, and with the knowledge of the assignee of the bond.
When a man is charged with stealing the bond of another, we can at once understand,the object he probably had in view; that is, to collect the bond and appropriate the proceeds to his own, use. But when he is charged with stealing his own bond, he cannot have had this object in view, and we must find another in *764 the circumstances of the case before we can admit that he may be g.uilty of the offence.
I do not doubt but that a man may be guilty of stealing his own bond; as a man may be guilty of stealing his own goods, for the purpose of charging a bailee for their value. A man would be guilty of stealing his own bond, if he were to take it from the desk of his- deceased creditor for the fraudulent purpose of preventing the discovery of the existence of the debt by the executor, and of avoiding its payment. Other circumstances might be sufficient to show a felonious intention in such a case.
But it is difficult to conceive how' such an intention can exist when the bond is openly taken from the pos- ' session of the holder. It is true that secrecy, though a usual, is not a necessary, attendant of larceny; which may be, and sometimes is, committed openly. That property-is;taken openly, in the presence of the owner, affords a. strong presumption that it is not taken feloniously; This presumption may be repelled by evidence; but strong evidence -should be required for that purpose, when the property taken is the party’s awn bond,
"What benefit can be derived from the act, is a question which at once presents itself; and cannot easily he answered'. The existence of the debt, and the fact that the- bond1 was taken by the obligor, are known and can he proved; and the payment of the money can as well he enforced without the bond as with it.
It may be said that the obligor may not know that by law a debt can be recovered even though the bond given for its payment be destroyed. But we cannot fairly attribute such ignorance to him, and it would be contrary to legal principles to do, so. A man is presumed to know .the law, even in a case in which the presumption would be a legal element of his guilt .*• Surely he ought to be presumed to know it. *765 in a case in which the presumption would make him innocent.
It is not sufficient if the party in taking the bond merely intend to provoke the owner; or to throw difficulty and delay in the way of its collection; or to obtain what he considers justice of the obligee. No benefit of that kind is such gain as the law contemplates in the definition of larceny. The party must intend to convert the subject itself to his own use, and not to use it temporarily for an ulterior object. If a man take a horse from another’s stable for the purpose of riding it, but not of converting it to his absolute use, he will not be guilty of larceny, though he leave the horse where the owner may never get it again. The mode of converting a bond to the obligor’s own use is to prevent its enforcement against him; and if he do not take it fraudulently for that purpose, he is not guilty of larceny.
The circumstances of this case support the presumption, arising from the nature of the subject and the open manner in which it was taken, that the act was not done feloniously. The bond had been given for part of the purchase money of a tract of land. There had been two controversies between the parties; one about the boundaries of the land, and the other about some wheat left growing on the land at the time of the sale, which the vendor had depastured contrary, as the vendee supposed, to his rights. It was proved that the former had been settled, though the vendee was evidently not satisfied with the settlement: The latter was subsisting at the time of the. alleged larceny. When the vendee took the bond, he told the assignee he would have a resurvey of the land, and would do nothing until the vendor had done him justice. This, with the other circumstances, strongly tends to show that the act was done under a sense of supposed injustice, and the influence of feelings of irritation and resentment, rather than with a felonious *766 intention. The observation made at the time of taking the bond, “Tell Mr. Jones I owe him nothing, and he has nothing to show that I do owe him anything,” may tend to show a felonious intention, but is not sufficient to counteract the other circumstances. It may be accounted for consistently with them as the hasty speech of an excited man.
That the prisoner had no idea he was committing larceny in taking the bond, is manifest from the whole record. The Attorney General expressed such a belief in the opening of his argument. The jury who tried the case, no doubt entertaining the same belief, recommended the prisoner to the clemency of the executive. And the judge who presided at the trial, doubtless with the same view, heartily joined the jury in their recommendation.
Intention is an important element in the constitution of crime, especially the crime of larceny. And though a man who knowingly commits a wrongful act may be guilty of larceny, even though he may not believe that the act amounts in law to larceny; yet his ignorance is an important circumstance to be weighed with others in determining whether the act was done with a felonious intention.
In addition to the other circumstances tending to the exculpation of the prisoner, is the important fact that on his trial the commonwealth conceded his good character for honesty, sobriety and industry, and dispensed with any proof on these points.
Tfpon the whole, I am of opinion that the prisoner is guilty of trespass, and not of felony; and that the judgment against him should be reversed, and a new trial awarded.
The other judges concurred in the opinion of Samuels, J.
Judgment affirmed.